21283. GEORGIA POWER COMPANY v. OKEFENOKEE RURAL ELECTRIC MEMBERSHIP CORPORATION.

ARGUED JULY 10, 1961—DECIDED SEPTEMBER 8, 1961—
REHEARING DENIED SEPTEMBER 25, 1961.

*Troutman, Sams, Schroder & Lockerman, Tench C. Coxe, Bennett, Pedrick & Bennett, Larry E. Pedrick, E. Kontz Bennett,* for plaintiff in error.

*J. Robert Smith, Cleburne E. Gregory, Jr., Arnall, Golden & Gregory,* contra.

*Robert D. Tisinger, Cleburne E. Gregory, Jr.,* for party at interest not party to record.

ALMAND, Justice. The case under review is one wherein the Georgia Power Company (hereinafter referred to as "power company"), a public utility under the jurisdiction of the Georgia Public Service Commission, sought to enjoin the defendant Okefenokee Rural Electric Membership Corporation (hereinafter referred to as "co-op."), from furnishing electric energy to the City of Folkston (hereinafter referred to as the "city"), for street lighting purposes in an area which was annexed to the city in 1951. After a hearing on the power company's petition for an interlocutory injunction the court upon consideration of the pleadings, demurrers, answers and evidence denied the power company's prayer for an interlocutory injunction. The exception is to that order.

The record discloses that the power company was granted a franchise by the city to use and occupy its streets for the purpose of supplying electric energy to the city and its inhabitants in 1957. In February, 1960, the city and the power company entered into a contract whereby the power company agreed to furnish to the city and the city agreed to receive electric energy for street lighting purposes for a period of five years with terms and rates as provided by the agreement. In 1951, pursuant to Ga. L. 1951, p. 2046, a rural area was annexed to the city. At that time the co-op. had electric lines and was servicing customers in the annexed area. The record does not show that the power company was serving customers in this area in 1951. In

July 1960, the city informed the power company and the co-op. of its desire to install additional street lighting. The power company notified the co-op. that they could not lawfully furnish electric energy to the city because the city was not eligible to become a member of the co-op. On September 13, 1960, the city granted a franchise to the co-op. to occupy a certain street and highway in that portion of the area annexed in 1951, for the purpose of installing and operating a street lighting system in the annexed area. On the same date the city and the co-op. entered into a contract whereby the co-op. agreed for a period of 10 years to construct, maintain, operate and furnish all the electric energy necessary for street lighting purposes in the annexed area, and the city agreed to pay according to a rate schedule.

Whether the court abused its discretion in refusing to grant an interlocutory injunction is dependent upon the answer to the following questions: (1) Does the power company have sufficient interest to maintain this action? (2) Does the contract of September 13, 1960, between the city and the co-op. violate the provisions of the act of 1937 (Ga. L. 1937, pp. 644-659), as amended by the act of 1960 (Ga. L. 1960, pp. 5, 6)? (3) Did the evidence authorize a finding that the power company was guilty of laches?

If an answer adverse to the power company is made to any one of these questions, then the order of the trial court must be affirmed. We will dispose of the questions in their order.

■ Does the power company have such an interest in the alleged contract between the city and the co-op. to give it the right to challenge the lawful power of the co-op. to enter into the street lighting contract? We are of the opinion that it does have such right. At the time (September 1960) the city and the co-op. entered into the contract, the power company had a contract with the city whereby it was furnishing electric energy to the city for street lighting and other municipal purposes with the right to furnish additional street lighting, which in 1960 included the area annexed in 1951. It was alleged that if the co-op. was permitted to install street lights in the annexed area and furnish electric energy for such street lights it would result in special injury and damage to the power company. The right of

the co-op. to contract to render electric service to the city was challenged as being violative of Sections 3 and 10 of the act of 1937 (Ga. L. 1937, p. 644; *Code Ann.* §§ 34A-103, 34A-111), in that in September 1960, the city, being at that time a customer of the power company, was ineligible to become a member of the co-op.

As we construe the allegations of the petition, the power company does not challenge the right of the city to grant a franchise to the co-op. for the use of the streets in the annexed area, but asserts that the co-op. under its statutory and corporate powers does not have the legal right to accept the city, or serve it, as a member of the co-op. Its contention is that if the co-op. is allowed to serve the city in the annexed area, its acts will be ultra vires or not in the scope of its authorized statutory powers. As a general rule the State alone will be heard to complain of a corporation for not conforming to the terms of its charter, or, in all events, the Attorney-General, either as a plaintiff or defendant, must be a party to the suit. But there is an exception to this rule where the immediate interest involved and sought to be protected, is not that of the general public but the special and peculiar interest of the complaining party. *Macon & Birmingham Ry. Co. v. Gibson*, 85 Ga. 1 (6) (11 SE 442, 21 ASR 435). It was there said (p. 23), "It is a mistake to suppose that corporations are created alone for their own benefit, or that their privileges are more sacred than their duties. We see not why a local and special duty may not be enforced at the instance and by the suit of the local and special body of citizens recognized in the charter as immediately interested in some of its provisions." In *Leverett v. Middle Ga. & Atlantic Ry. Co.*, 96 Ga. 385, 392 (24 SE 154), where a group of citizens sought to enjoin a railroad from violating the terms of its charter this court said, "Those persons who have invested money upon the faith of this contract between the railroad company and the State, are entitled to have that contract performed. They are entitled to have the railway company comply with the terms of its charter in this respect, not because of any public inconvenience which might necessarily result from its breach, but because in their own estates they suffer a special particular

damage in which the public in no manner participate. The threatened injury, if permitted, would result in irreparable damage to them and their property; and it can never be allowed that, under such circumstances, a railroad company can be permitted to violate its charter to the injury of the citizen, and leave him without redress." In *Brown v. Atlantic & Birmingham Ry. Co.*, 126 Ga. 248 (55 SE 24, 7 AC 1026), it was held that where a railroad company had been given the power to choose its particular route between two designated termini and had exercised its discretion in this regard, it could not subsequently change its location without express legislative authority. It further held that if third parties would suffer special damages by reason of the relocation of the route of the railroad they had a right of action by way of injunction to prevent the relocation of the railroad. See also *Atlantic & Birmingham Ry. Co. v. Kirkland,* 129 Ga. 552 (1) (59 SE 220); *Hudspeth v. Hall,* 111 Ga. 510 (36 SE 770); and *Blackmon v. Gulf Life Ins. Co.,* 179 Ga. 343 (3) (175 SE 798) (Atkinson & Gilbert, JJ., dissenting), for like rulings. In Georgia Power Company v. T.V.A., 14 F. Supp. 673, 675 (N.D. Ga.), Judge Sibley said, "The Georgia Power Company has a franchise to do the business involved in the territory in question, but it has no monopoly . . . Its franchise exercised by it in the territory does give it a standing to question the right of TVA to operate there if TVA has no lawful right."

■ Moving on to the second question as to whether or not the contract between the city and the co-op. for electric street lighting in the annexed area was authorized or permitted under the provisions of the act of 1937 as amended, the answer is no.

The act of 1937 (Ga. L. 1937, p. 644) known as the Electric Membership Corporation Act, declares in Section 3 its purpose to be that cooperative, non-profit, membership corporations may be organized for the purpose of engaging in rural electrification in "(1) The furnishing of electric energy to persons in rural areas who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation." Section 2 (5) defines the word "person" as including the State or

political subdivision thereof or any body politic. Section 10 provides, " . . . all persons in rural areas proposed to be served by the corporation who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation, shall be eligible for membership in a corporation organized under this Act." At the time the co-op. entered into the street lighting contract the city was receiving electricity, not only for street lights, but for other municipal purposes from the power company; and, therefore, was not eligible for membership in the co-op.

The act of 1960 (Ga. L. 1960, pp. 5, 6; *Code Ann.* § 34A-102 (8)), does not modify or change the eligibility requirement as to membership under *Code Ann.* § 34A-111, but simply provides that when a rural area, wherein the co-op. is furnishing electric energy to its members, is annexed to a city, the co-op. has the right to continue such service to member consumers and also to new members, such service being limited to a distance not exceeding 300 feet from an existing line of the co-op.

The city not being eligible for membership under *Code Ann.* § 34A-111, it could not be classified as a new member consumer in the annexed area under the 1960 amendment. Two supposititious cases will demonstrate the correctness of this conclusion. First, suppose A was living in a rural area where electric energy was being supplied by the co-op. and the power company, and at the time this rural area was annexed to the city he was a customer of the power company. He would not be eligible for membership in the co-op. because he desired additional electric energy to operate a work shop in the back yard of his residence. Second, suppose at the time of the annexation of the rural area to the city, A's lot was partly in the city and partly in the rural area but his residence was within the city limits and he was a customer of the power company. If after annexation he wanted to build a workshop on the part of his lot that was in the annexed area, he would not be eligible for membership in the co-op. for electric service to his workshop even if his proposed workshop was within 300 feet of an existing line of the co-op.

■ In its answer the co-op. asserted that the power company, being guilty of laches, is not entitled to equitable relief. It contended that the power company knew in the summer of 1960 that the co-op. had submitted a proposal to the city to furnish street lighting in the annexed area; that it knew in September 1960, that the city and the co-op. had entered into a contract for street lighting and did not bring this action until December 1, 1960; and that in this intervening period the co-op. had become obligated for the expenditure of $5,820 for the purchase of mercury vapor lamps and other material for the purpose of carrying out its contract with the city.

On the hearing there was evidence that either in July or August 1960, when both parties had submitted their proposals for street lighting, the power company urged the co-op. to withdraw its proposal on the ground that they had no lawful authority to serve the city; that after the city entered into the contract with the co-op. on September 13, 1960, an agent of the power company wrote a letter on October 19, 1960, to the president of the co-op. demanding that the co-op. cease installing street lights in the city, and that if it failed to do so, the power company would have to resort to litigation. This letter was in response to one from the co-op. to the power company dated October 14, advising the power company of the co-op.'s contract with the city. A witness for the co-op. testified that immediately after the contract was entered into some of the materials were shipped. After the court action was begun, orders for other materials were canceled. For the materials received, the co-op. had paid in the neighborhood of $5,400. Before the co-op. made any contract with anybody to furnish materials to the co-op. for carrying out the contract, the co-op. was advised before and after the contract was signed that the power company had challenged the right of the co-op. to make such a contract. There was no evidence that the co-op. had done any construction work in the street.

"In determining whether there has been laches, there are various things to be considered, notably the duration of the delay in asserting the claim, and the sufficiency of the excuse offered in extenuation of the delay, whether plaintiff acquiesced in the

■

assertion or operation of the corresponding adverse claim, the character of the evidence by which plaintiff's right is sought to be established, whether during the delay the evidence of the matters in dispute has been lost or become obscured or the conditions have so changed as to render the enforcement of the right inequitable, whether third persons have acquired intervening rights, the nature of the right asserted and the relief asked, the nature of the duty or obligation sought to be enforced, and whether plaintiff or defendant was in possession of the property in suit during the delay. To charge a party with laches in delaying to assert a right, an opportunity to have acted sooner must have existed; if he acted at the first possible opportunity, he is not culpable . . . 21 C. J. 212, 225, §§ 212, 217, 218, 219, and cit." *Equitable Bldg. & Loan Assn. v. Brady,* 171 Ga. 576, 585 (156 SE 222).

We cannot say that under the evidence a finding was authorized as a matter of law or fact that the power company was guilty of laches.

■ The co-op. having neither statutory nor charter power to enter into a contract with the City of Folkston, which was ineligible for membership in the co-op. under the Rural Electrification Act of 1937, as amended, it was error for the court to deny the prayers of the power company to enjoin the co-op. from carrying out the terms of its contract with the city.

*Judgment reversed. All the Justices concur.*