21396. GEORGIA POWER COMPANY v. ALTAMAHA RURAL ELECTRIC MEMBERSHIP CORPORATION.

ARGUED SEPTEMBER 12, 1961—DECIDED OCTOBER 11, 1961—
REHEARING DENIED OCTOBER 24, 1961.

*Troutman, Sams, Schroder & Lockerman, Tench C. Coxe, Spivey & Carlton, Milton A. Carlton,* for plaintiff in error.

*L. Clifford Adams,* for party at interest.

*Darius N. Brown, Homer S. Durden, Jr., Arnall, Golden & Gregory,* contra.

MOBLEY, Justice. ■ The exception is to a judgment of the Superior Court of Emanuel County overruling the general demurrer of Georgia Power Company to the petition as amended of Altamaha Rural Electric Membership Corporation, which sought to enjoin the Power Company from duplicating and parellelling the electric distribution lines of the Co-op, and crossing over the right of way of the Co-op's lines in an area annexed to the City of Swainsboro; to the grant of an interlocutory injunction restraining the Power Company as prayed; and to the denial of the prayers of the Power Company for injunctive relief against the Co-op.

378

The parties agree that the controlling question is whether the Co-op is authorized to distribute and sell electricity in the annexed area from lines erected in that area after March 10, 1959, the date of passage of the annexing act, but completed before the effective date of the act, January 1, 1960. The right of the Co-op to serve customers from the lines erected in the area prior to March 10, 1959, is not questioned.

The Georgia Electric Membership Corporation Act (Ga. L. 1937, p. 644; Code Ann. § 34A-103 (1) ) authorized electric membership corporations to furnish "electric energy to persons in rural areas who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation."

Rural area is defined in the act as "any area not included within the boundaries of any incorporated or unincorporated city, town, or village, having a population in excess of 1,500 inhabitants, according to the last Federal census, and includes both the farm and nonfarm population." Code Ann. § 34A-102 (8). To that definition was added by amendment (Ga. L. 1960, p. 5) the following: "and the inclusion by annexation or otherwise, of any portion of a rural area, as defined in this Chapter, within the limits of an incorporated or unincorporated city, town, or village regardless of its population, shall not in any respect impair or affect the right of a corporation to continue to furnish electric energy to its member consumers or to new member consumers within such newly annexed area, provided that the right to serve new member consumers shall be limited to a service drop not exceeding three hundred (300) feet from any lines of such corporation *in existence at the time of annexation or inclusion of any portion of rural area,* as defined in this Chapter, within limits of an incorporated or unincorporated city, town or village." (Italics ours.)

The legislature in these acts has distinctly declared its intention. The language of the statutes is plain and unambiguous and no interpretation is needed or permitted. See *Standard Oil Co. of Ky. v. State Rev. Comm.,* 179 Ga. 371 (176 SE 1), and cases cited.

From March 10, 1959, the date of the passage of the act annex-

ing the area in dispute, until January 1, 1960, the effective date of the act, this area was not a part of the city. It became annexed to and incorporated within the city on January 1, 1960, when the act became effective. It was admittedly a rural area on March 10, 1959, the date of the passage of the act, and it necessarily remained such until the act became effective. Its status as a rural area was not changed during the interim from March 10, 1959, to January 1, 1960. That being true, the Co-op was authorized to extend its distribution lines within that area until the area was actually changed from a rural area to a part of the City of Swainsboro on January 1, 1960.

There is nothing in the act to support the contention of the Power Company that the Co-op was prohibited from running lines in this area after it had knowledge of the passage of the act on March 10, 1959, annexing this area as of January 1, 1960. The act specifically authorized a co-op, subsequent to annexation (not from the date the co-op receives notice that an area is to be annexed at some future date), to continue to serve in annexed areas *from distribution lines in existence at the time of annexation* irrespective of when the lines were erected.

The Power Company relies upon the case of *City of Moultrie v. Colquitt County Rural Elec. Co.*, 211 Ga. 842 (89 SE2d 657). At the time that decision was rendered the Georgia Rural Electric Act prohibited rural electric co-ops from furnishing electric energy in municipalities having more than 1,500 inhabitants. The 1960 amendment was obviously passed for the purpose of correcting the situation created by that holding, i. e., that a co-op could not serve customers in a rural area after it had been annexed by a city having a population in excess of 1,500 people. In the *Moultrie* case the area involved was annexed to the city and applications for permanent service were thereafter submitted, and it was upon a petition by the co-op to enjoin installation of electric service upon those applications that the court acted, and, in that connection, held (p. 852): "the limitation imposed by the Electric Membership Corporation Act, that corporations created under that act may operate electric lines in rural areas not receiving service from a municipal corporation or a corporation regulated by the Public Service Commission, is a limitation

to be determined at the time the application for service is made." The court concluded with the ruling that "the petitioner could not legally extend its electric lines in the corporate limits of the city (under the Electric Membership Corporation Act of 1937, Ga. L. 1937, pp. 644-659; *Code, Ann. Supp., Chapter* 34A)." Under the 1960 amendment (Ga. L. 1960, p. 5), the co-op could continue to furnish electric energy in the newly annexed area to its member consumers and to new member consumers who can be reached by a service drop not exceeding 300 feet from any lines of the co-op in existence at the time of annexation. Nothing here ruled conflicts in any way with the *Moultrie* case but is in harmony therewith. The trial court properly overruled the general demurrers, as the petition stated a cause of action, and the Superior Court of Emanuel County had jurisdiction since it was alleged that the defendant had an office and agent in that county.

■ Having held in Division 1 that the Co-op lines were legally constructed in the annexed area, and there being evidence to support the finding of the trial court that the line erected by the Power Company duplicates and crosses over the lines of the Co-op and that the premises of the applicant for electric service are within 300 feet of the Co-op lines and are capable of being served by existing facilities of the Co-op, the trial court did not err in holding that the erection of the line by the Power Company violated that provision of the contract between the parties providing that except under certain conditions, none of which exist here, neither party "shall distribute or furnish electrical energy to anyone who, at the time of the proposed service, is receiving electric service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system. . .", and in temporarily enjoining the Power Company from duplicating or paralleling the distribution lines of the Co-op in the area in question, or from crossing the Co-op's right of way in the area, or from doing any of the other acts complained of in the petition.

■ In view of the foregoing rulings, the trial court did not err in denying the injunctive relief prayed for by the Power Company.

*Judgment affirmed. All the Justices concur.*