## 23162. GEORGIA POWER COMPANY v. ALTAMAHA ELECTRIC MEMBERSHIP CORPORATION.

ARGUED OCTOBER 11, 1965—DECIDED NOVEMBER 4, 1965.

*Spivey & Carlton, Milton A. Carlton, Troutman, Sams, Schroder & Lockerman, Tench C. Coxe,* for appellant.

*Homer S. Durden, Jr.,* for appellee.

GRICE, Justice. The controversy here is between two utility companies over the right to furnish electricity to consumers in

a certain area within the corporate limits of a municipality. Georgia Power Company filed a petition against Altamaha Electric Membership Corporation (hereinafter referred to as the Co-op) in the Superior Court of Emanuel County seeking to enjoin the Co-op from constructing additional power lines and from furnishing electricity to consumers in specified areas of the City of Swainsboro. Those areas were the original city limits portion of a subdivision known as Eastwood Estates and the portions of such subdivision annexed to that city on January 1, 1960, May 13, 1963, as well as any other areas annexed thereto since 1939. Excepted from the injunction sought were service drops of 300 feet or less from the Co-op's lines as they existed on the dates of annexation. The Co-op answered, denying the material allegations of the petition.

The case proceeded to trial before the judge without a jury upon the facts contained in the pleadings and an agreed stipulation. The court enjoined the Co-op from constructing any additional power lines and from furnishing electricity to consumers within the original city limits area of Eastwood Estates. But it denied to the Power Company the right to cross over the existing power lines of the Co-op within the areas of Eastwood Estates annexed on January 1, 1960, and May 13, 1963, and any other areas annexed since 1939; and it also denied the Power Company's prayer for injunction against the Co-op's construction of additional lines and service to consumers in those areas annexed on January 1, 1960, and May 13, 1963.

The Power Company appealed from the denial of the right to cross over the Co-op's lines within the annexed areas and from the denial of injunction against the Co-op's construction and service in such annexed areas.

The facts essential to this review, as established by uncontroverted allegations in the pleadings and as stipulated, are those which follow.

The Co-op is an electric membership corporation organized under the Electric Membership Corporation Act. Ga. L. 1937, p. 644, as amended.

Since 1950 the Power Company has exercised its rights to a franchise, granted by the City of Swainsboro, to furnish electric energy to the inhabitants of that city.

The City has, and has had since 1930, a population in excess of 1,500 persons.

Effective January 1, 1960, that portion of Eastwood Estates southeast of the City was annexed to it. At that time the Co-op had no power lines or facilities in that part of Eastwood Estates. During 1964 the Co-op extended electric service to consumers at specified lots within that area. Each of those lots was, when service was extended to it and is now, served by a line extending more than 300 feet from the nearest line of the Co-op's distribution system in place at the time such area was annexed.

During 1963 and 1964 the Co-op extended service to specified lots in that portion of Eastwood Estates within the original limits of the City as it existed upon its incorporation in 1900.

The Power Company, on ascertaining that service had been extended to certain lots in the portion of Eastwood Estates annexed on January 1, 1960, and also in the portion within the original city limits, informed the Co-op that pursuant to the Electric Membership Corporation Act (Ga. L. 1937, p. 644, supra), the Co-op had no right to serve those consumers and demanded that it cease doing so. The Power Company offers to provide service to all consumers in Eastwood Estates whom the Co-op is legally prohibited from serving.

The Co-op plans to build certain additional power lines and facilities in Eastwood Estates in the near future, which extensions would be in excess of 300 feet from its lines as they existed in the areas annexed on January 1, 1960, and on May 13, 1963. It also plans to build additional power lines in all of the other real estate subdivisions or areas annexed into the City since 1939.

The Co-op is not subject to the jurisdiction of the Georgia Public Service Commission, but the Power Company is so subject.

The Power Company has not been ordered by a properly constituted State regulatory authority to distribute or furnish electrical energy to any of the lots in Eastwood Estates complained of here. Those lots are capable of being served and are actually being served by the Co-op. In order for the Power

Company to serve such lots, it would be necessary for its distribution lines to cross over the Co-op's distribution line which has been in existence since 1939.

The Power Company and the Co-op executed in 1956 a WR-5 contract which was amended in 1963. It covers, among other things, the sale of electrical energy by the Power Company to the Co-op, and sets forth terms and conditions of avoiding wasteful duplication of facilities between such parties.

One of the provisions of the contract is as follows: "Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall duplicate the other's facilities except insofar as such duplication shall be necessary in order to transmit the electrical energy between unconnected points on its lines. Neither party, unless ordered to do so by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone, who, at the time of the proposed service, is receiving electrical service . . . [from] the other, or whose premises are capable of being served by the existing facilities of the other without the extension of its distribution systems . . ."

The foregoing facts compel the conclusion that the Power Company's contentions are meritorious.

■ Authority is given by the Electric Membership Corporation Act (Ga. L. 1937, p. 644, as amended, supra) to the corporations therein contemplated to furnish electric energy to persons "in rural areas who are not receiving electric service from any corporation subject to the jurisdiction of the Georgia Public Service Commission, or from any municipal corporation." Under that Act the term "rural area" is defined as "any area not included within the boundaries of any incorporated or unincorporated city, town, or village, having a population in excess of 1,500 inhabitants . . ."

In 1960 the definition of "rural area" was expanded by the following: ". . . and the inclusion by annexation or otherwise, of any portion of a rural area, as defined in this chapter, within the limits of an incorporated or unincorporated city, town or village, regardless of its population, shall not in any respect impair or affect the right of a corporation to *continue*

to furnish electric energy to its member consumers or to new member consumers within such newly annexed areas, provided that the right to serve new member consumers shall be limited to a service drop not exceeding three hundred (300) feet from any lines of such corporation *in existence at the time of annexation or inclusion of any portion of rural area,* as defined in this chapter, within limits of an incorporated or unincorporated city, town, or village." (Emphasis ours.) Ga. L. 1960, p. 5.

From the facts here it is clear that the Co-op had no electric lines or facilities in the area annexed on January 1, 1960, at the time of such annexation.

Therefore, the Co-op had no authority, subsequent to such annexation, to move into that area by constructing lines and providing service to consumers residing there. See *Georgia Power Co. v. Okefenokee Rural Elec. Membership Corp.,* 217 Ga. 219 (121 SE2d 777); *Georgia Power Co. v. Altamaha Rural Elec. Membership Corp.,* 217 Ga. 376 (122 SE2d 250). Its only authority as to this annexed area was service drops not exceeding 300 feet from lines already in existence at the time of such annexation.

Nor has the Co-op, by constructing new lines or by rendering service beyond 300 feet from its lines in existence at the time of annexation, pre-empted this area to the exclusion of the Power Company.

The Co-op's position, succinctly stated, is that having already constructed its lines there, it has the exclusive right to operate there under the non-duplicating clause of its WR-5 contract with the Power Company. It relies upon the provisions that "Neither party . . . [except when properly ordered] shall dulpicate the other's facilities except . . . to transmit the electrical energy between unconnected points on its lines," and also that "Neither party . . . [except when properly ordered] shall distribute electrical energy to anyone, who . . . is receiving electrical service from the other, or whose premises are capable of being served by the existing facilities of the other without extension of its distribution system." The Co-op points out that none of the exceptions exist here. It urges that its interpretation of the contract accords with the purpose

of the 1960 amendment to the Electric Membership Corporation Act (Ga. L. 1960, p. 5) and is thus valid.

We cannot agree with that position. The prohibitions against duplication of facilities and distribution, recited in their contract, mean facilities and distribution resulting from *authorized* presence in the area, not unauthorized as here. To construe otherwise would sanction the Co-op's occupation of the area only because the Co-op occupied it first, even though such occupation was unauthorized. Such construction would contravene the Electric Membership Corporation Act. Ga. L. 1937, p. 644, as amended.

The situation here is significantly different from that in *Georgia Power Co. v. Altamaha Rural Electric Membership Corp.*, 217 Ga. 376, supra, where "the Co-op lines were legally constructed in the annexed area."

What is said above applies also to the Co-op's planned construction in the area annexed on May 13, 1963.

(a) Therefore, the trial court erred in denying the Power Company's prayer for injunction against the Co-op furnishing electric energy to those lots in the area annexed on January 1, 1960, except those which may be serviced by drops of 300 feet or less from its lines in existence at the time of such annexation; and also in denying the injunction sought against the Co-op's planned construction of additional lines in the areas of Eastwood Estates annexed on January 1, 1960, and on May 13, 1963, except for the authorized 300 foot service drops from lines in existence at the time of annexation.

(b) However, facts are not shown which warrant an injunction against the Co-op's alleged planned construction of power lines in "all of the other real estate subdivisions or areas annexed into the City . . . since 1939." It is not shown where such areas are located, whether they are presently being served by either party, or whether the Co-op had lines within them when they were annexed. Nor does the Power Company offer to furnish electricity to such areas. The trial court properly refused to grant an injunction as to these areas.

■ Since, under our view, the Power Company, not the Co-op, has the right to construct lines and to provide service in the

areas annexed January 1, 1960, and May 13, 1963, it is authorized, if necessary, to cross over the Co-op's existing distribution line. Such "cross over" would not violate the non-duplicating provisions of the parties' WR-5 contract, because such crossing over would not constitute a duplication of facilities or service, as is prohibited thereby.

Hence, we hold that the trial court erred in denying the Power Company the right to cross over the Co-op's line where necessary to render service in such areas.

For the reasons stated above, the judgment appealed from is *Reversed in part, affirmed in part. All the Justices concur, except Mobley, J., not participating for providential cause.*