PAYNE BUS LINES, et al. *v.* JACKSON CITY LINES, INC.

Feb. 22, 1954

No. 39064          54 Adv. S. 21          70 So. 2d 520

J. C. Stennett, Lewis & Alexander, Jackson, for appellant.

*Young & Daniel,* Jackson, for appellee.

ETHRIDGE, J.

In this suit we are concerned with questions of whether a common carrier of passengers for hire in a municipality must obtain a franchise in order to engage in such business in the city, and whether a competing franchised carrier can enjoin the unfranchised operations of another carrier.

This is an appeal by J. R. Payne, Jr., defendant below, from an order of the Chancery Court of the First Judicial District of Hinds County overruling Payne's general demurrer to the bill of complaint filed by Jackson City Lines, Inc., appellee. The following are facts alleged in the bill of complaint. Jackson City Lines, Inc., is a Mississippi corporation and defendant Payne is a resident of Hinds County. On October 22, 1941, the Mayor and Commissioners of the City of Jackson lawfully adopted an ordinance granting to complainant a 25-year nonexclusive franchise to operate a motor bus transportation system for hire, for passengers only, within the City of Jackson. On November 24, 1941, an election was held at which a majority of the qualified electors of the city voted to approve the granting of the franchise, and it thereupon became effective. Complainant, Jackson City Lines, Inc., paid the city $1,000 as a consideration for its franchise, which has been in effect since 1941 and has approximately 14 years more to run.

A copy of the franchise was attached to the bill as an exhibit. It granted to Jackson City Lines rights and franchises to operate for a period of 25 years a motor bus transportation system, by trackless vehicles, within the corporate limits of the city, present and future.

Complainant agreed to maintain reasonable and adequate schedules and transportation for passengers, and was given the right to establish additional routes, and the city council could require additional routes. The hours of service would be such as would provide reasonable and adequate transportation. The City Council has control of changes in service. Subject to the approval of the City Council, the company could designate and mark bus stops. The city agreed to provide adequate spaces and zones for bus stops and not to "permit other vehicles to use said bus stops so as to interfere with the bus operations"; and to enforce such traffic rules as would serve to expedite the movements of the company's buses. Fares or rates to be charged were stated, with the city retaining the right to regulate the same. The company agreed to maintain certain liability insurance. The city upon a stated notice had the right to declare the franchise forfeited for violation or default of its terms, and for the rights granted the company agreed to pay the city a consideration of $1,000.

Section 7 of the franchise provided as follows: "As far as within its power lies, the said Council shall protect the Company from unfair and unreasonable competition by street railway lines, motor bus lines, jitney bus operation or taxi cabs doing other than strictly taxi cab business, but this grant shall not be construed as an exclusive franchise for the transportation of passengers for hire."

The bill of complaint then charged that Payne is operating buses and motor coaches over the streets of the city under the names of Payne Bus Lines and Pecan Grove City Lines, without any franchise or other legal right having been granted to him by the city; that the defendant is operating such buses on, over and adjacent to routes required to be served by complainant, and which are being served by complainant; that the defendant is picking up hundreds of passengers each day who would normally be patrons of Jackson City Lines,

is collecting fares from them, and is unlawfully interfering with the rights granted complainant in its franchise. The bill charged that all of the routes operated by Payne are operated by him in violation of the rights granted complainant by its franchise, and that defendant has no legal right to serve such routes or any other routes within the city, and that no franchise has been granted to defendant by the city.

The bill further averred that as a result of these activities of defendant, Jackson City Lines was and is caused irreparable injury and damage, in that defendant is taking revenue in an amount in excess of $200 each day which would, except for his operations, accrue to complainant's lawful operations under its franchise; that the complainant's rights are being seriously threatened and damaged as a result of Payne's activities, and that Payne proposes to continue such operations and to expand them in an attempt to destroy complainant's franchise. The defendant is picking up and discharging passengers along the routes and in the zone of influence of complainant's operations, and such practice has continued for many months. Defendant is making a practice of scheduling its buses just ahead of those operated by complainant, in an effort to cause passengers waiting for complainant's buses to ride those operated by defendant. The routing and scheduling of defendant's buses are planned in such a way as to slow down the operations of complainant, and defendant improperly parks at various bus stops to hamper complainant's operations.

The bill further charged that by defendant's acts the people of the city are caused to receive bus service which is not as good as it would be if Payne were not so operating; that his operations are a serious impairment to complainant's property rights under its franchise; that the revenue taken in by Payne is substantial, and, because it would accrue to Jackson City Lines but for Payne's illegal operations, causing a reduction

in the service available to the people of the city, particularly as to night, Sunday, and holiday service, which never pays for itself, and because it reduces complainant's revenue, complainant is limited in the amount of nonpaying service which it can provide. These conditions have existed for many months and will continue to exist, and to irreparably damage and injure complainant, which has no speedy, complete and adequate remedy at law. Hence Jackson City Lines prayed that Payne be enjoined and restrained from operating his buses over the streets of the city until he shall be lawfully entitled so to do by franchise, and that he be restrained from picking up and discharging passengers within the city limits.

To this bill of complaint Payne filed a general demurrer, averring that there was no equity on the face of the bill. On April 9, 1953, the chancery court overruled that demurrer. Appellant then petitioned for an interlocutory appeal under Code Section 1148, averring that such appeal would settle all issues of law and fact and would make any further hearing unnecessary except for the entry of a final decree. On May 5, the trial court entered an order granting Payne an interlocutory appeal.

Appellant argues that there is no statute or ordinance prohibiting him from using the streets of the city for a commercial passenger bus business, and that in the absence of either, he has an inherent constitutional right to the use of the city streets for that purpose and needs no license. ■■■ The streets and highways, built and maintained at public expense, belong to the public, and no private individual or corporation has a right to use them for commercial purposes for private gain without the consent of the state or municipality involved. Scott v. Hart, 128 Miss. 353, 91 So. 17 (1922); 55 Am. Jur., Urban Transportation, Secs. 70, 71. ■■■ However, it is not necessary to place this decision on that basis, because we think that a clear and necessary implication

from the statutes is that a commercial carrier of passengers for hire in a municipality must obtain a franchise before the carrier can operate for those purposes. Code of 1942, Sec. 3805, as amended in 1950 by Sec. 3374-73, provides in part that every franchise or grant of any right to use the streets and bridges of a municipality to any street railway or "other public utility" must be approved, after the passage of an ordinance granting the same, by a majority of the qualified electors of the municipality voting at an election. Code Sec. 3421, as amended in 1950 by Sec. 3374-129, states that the governing authorities of municipalities have the power to exercise full jurisdiction in the matter of streets. Sec. 3440, as amended in 1950 by Sec. 3374-143, gives the governing authorities of municipalities the power to fix the rates and charges of persons operating vehicles for the transportation of persons for compensation within the city. See also Sec. 3454, as amended in 1950 by Sec. 3374-152.

Code Sec. 3374-85, which prior to 1950 was Sec. 3808, states: "No municipality shall have the power to grant to any person, firm or corporation any exclusive franchise or any exclusive right to use or occupy the streets, highways, bridges, or public places in such municipality for any purpose, nor shall any municipality grant, renew, or extend any such franchise, privilege or right, without compensation nor for any longer period than twenty-five (25) years."

It is expressly provided by statute that no person may operate a taxicab in any city or town unless he shall first have been licensed so to do. Code Sec. 3495. And motor carriers on state highways are required to have licenses from the Public Service Commission. Code Sec. 7636. Furthermore, we think that a clear and necessary implication from the foregoing statutes is that no one can operate a common carrier for private profit in a municipality without obtaining a franchise from it, and appellant has not done so. These statutes require

that a franchise must be approved by a city ordinance, and by a majority vote of the electors; that a franchise cannot be exclusive, cannot be granted without compensation, and cannot be made for a period longer than 25 years. If appellant should be permitted to use the city streets in his business without a franchise, then all of these statutes could be completely circumvented and avoided. For example, if he could operate without a franchise, he would not have to get a city ordinance approving his operations, or approval by the electorate of the city, he would not have to pay anything for his right of operation, and he could stay in business for a period longer than 25 years. He could operate on the most profitable routes and at the most profitable hours, leaving the poor-paying service to the franchise holder who is required to render service, not only when profitable but also at other times. If appellant's position were accepted, he could choose to operate on the most profitable days in the week, and not operate on other days, since he has no franchise obligations. This would of course completely ignore the convenience and necessities of the traveling public, who find it necessary to get back and forth to work six days in the week. On appellant's theory, his operations could ignore the convenience, safety and protection of the public, and he could operate at his pleasure without regard for any rights of the public. Hence it is manifest that these statutes establishing conditions for the grant and exercise of franchises for public utilities, such as a passenger bus line, require that a person before engaging in such operations must have a municipal franchise. Somewhat analogous to the present question of statutory interpretation is Peoples Transit Company v. Louisville Railway Company, 220 Ky. 728, 295 S. W. 1055 (1927).

Appellant further says that the City of Jackson and not appellee should have brought this action, that appellee has a contract with the city to protect it from

unfranchised competition, and that the city was the proper party, not appellee, to seek this injunction. But a franchise even though nonexclusive is a valuable property right. 23 Am. Jur., Franchises, Secs. 4, 39; Teche Lines, Inc. v. Board of Supervisors of Forrest County, 165 Miss. 594, 142 So. 24 (1933). And the owner of a franchise, although not exclusive, is entitled to relief by way of an injunction against a threatened or actual injury to his property rights through illegal, nonfranchised competition, on the theory that the rights granted although not exclusive are actually so as to all others not having a similar franchise. 1 Pond, Public Utilities (4th Ed. 1932), Sec. 186, p. 428; McInnis v. Pace, 78 Miss. 550, 29 So. 835 (1900); Frost v. Corporation Commission, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 482 (1929); Memphis Street Railway Company v. Rapid Transit Company, 133 Tenn. 99, 179 S. W. 635 (1915); 55 Am. Jur., Urban Transportation, Sec. 71. Hence appellee with a valid franchise clearly had the right to protect its property interests against an illegal, nonfranchised carrier.

The franchise contract owned by appellee is authorized by statutes, and is valid. The general demurrer is not sufficient to raise the alleged procedural defects concerning the ordinance and the franchise. The bill specifically charges that the ordinance was lawfully adopted and that after the election the franchise became effective according to law. ▆▆▆ Nor is there any merit in appellant's argument that appellee had an adequate remedy at law. Monetary damages would be difficult and perhaps impossible to ascertain, and appellee would be forced to bring continuing and successive lawsuits for damages. Griffith, Miss. Chancery Practice (2d Ed. 1950), Secs. 436, 439; 28 Am. Jur., Injunctions, Sec. 48. For these reasons we affirm the order of the chancery court overruling appellant's general demurrer, and re-

192

mand the case for further proceedings consistent with this opinion.

Affirmed and remanded.

*Roberds, P. J.,* and *Lee, Kyle,* and *Arrington, JJ.,* concur.