CITY OF LOGAN, a municipal
corporation, Plaintiff and
Appellee,

v.

UTAH POWER & LIGHT COMPANY,
a corporation, Defendant
and Appellant.

No. 880411.

Supreme Court of Utah.

July 25, 1990.

Albert J. Colton, W. Cullen Battle, Jodi Knobel Feuerhelm, Sidney G. Baucom, and Samuel F. Chamberlain, Salt Lake City, for Utah Power & Light.

W. Scott Barrett, Logan, for Logan City.

John T. Nielsen and James A. Holtkamp, Salt Lake City, for amicus Utah Associated Mun. Power.

ZIMMERMAN, Justice:

Utah Power & Light ("UP & L") appeals from a decision of the first district court ordering UP & L, upon payment of $117,-000 by the City of Logan, to transfer to Logan title in and use of UP & L's electrical distribution facilities located in a previously unincorporated portion of Cache County that has been annexed by Logan. UP & L claims that the compensation ordered by the trial court pursuant to section

10-2-424 of the Utah Code is less than that required by both the fifth and fourteenth amendments of the United States Constitution and article I, section 22 of the Utah Constitution. We agree. We construe section 10-2-424 to require payment of compensation to UP & L in an amount that would be due under article I, section 22 and find that the trial court did not so read section 10-2-424. We reverse the trial court's award of $117,000 to UP & L and instate the parties' stipulated amount of $434,987. We rescind the trial court's transfer of title to Logan and remand for a determination of that issue.

UP & L supplies electricity within Cache County under an exclusive franchise from the county and a certificate of convenience and necessity from the Public Service Commission. The franchise and the certificate both run to the year 2016. A number of Cache County customers of UP & L, now Logan residents and businesses, began receiving services from UP & L under the terms of the franchise and the certificate when they were located in unincorporated parts of the county. In the intervening years, their properties were annexed by Logan. The area that includes the fifty-five customers involved in this suit ("the customers") became part of Logan between 1969 and 1985. The expansion of Logan's boundaries also brought within the city limits some of UP & L's distribution facilities, including lines, poles, and transformers.

Logan, asserting its authority under article XI, section 5(b) of the Utah Constitution to provide "all local services," sought to provide electrical services to those UP & L customers who lived within Logan's expanded boundaries and to exclude UP & L from that territory.[1] The legislature tried to deal with the problems presented when a municipality attempts to take over customers of a utility before its franchise expires. Under the terms of section 10-2-424 of the Utah Code,[2] a municipality such as Logan cannot supplant the utility as the provider of electricity without the utility's consent until it has "reimbursed the electric utility company which previously provided the services for the fair market value of those facilities dedicated to provide service to the annexed area." Utah Code Ann. § 10-2-424 (1986). Logan and UP & L attempted unsuccessfully to reach agreement respecting the fair market value of the facilities dedicated to providing services to the fifty-five annexed customers. Section 10-2-424 provides that in the event that the parties cannot agree upon the amount of such reimbursement, the matter is to be submitted to the district court. The parties invoked this remedy.

At trial, the dispute centered on which facilities were properly within the statutory definition of "facilities dedicated to provid[ing] service to the annexed area" for the purpose of determining their fair market value. Logan asserted that the quoted term referred only to those facilities within Logan dedicated to providing services to customers within the annexed area. Both parties agreed that if this approach were adopted, the fair market value of the dedicated facilities would be $117,000. UP & L contended, however, that under section 10-2-424 and under the state and federal due

---

1. Article XI, section 5 provides in full:

    The power to be conferred upon the cities by this section shall include the following:

    . . . .

    (b) To furnish all local public services, to purchase, hire, construct, own, maintain or operate, or lease, public utilities local in extent and use; to acquire by condemnation, or otherwise, within or without the corporate limits, property necessary for any such purposes, subject to restrictions imposed by general law for the protection of other communities; and to grant local public utility franchises and within its powers regulate the exercise thereof.

Utah Const. art. XI, § 5.

2. Section 10-2-424 provides in full:

    Whenever the electric consumers of the area being annexed are receiving electric utility services from sources other than the annexing municipality, the municipality may not, without the consent of the electric utility, furnish its electric utility services to the electric consumers until the municipality has reimbursed the electric utility company which previously provided the services for the fair market value of those facilities dedicated to provide service to the annexed area. If the annexing municipality and the electric utility cannot agree on the fair market value, it shall be determined by the state court having jurisdiction.

Utah Code Ann. § 10-2-424 (1986).

process clauses, the definition of "dedicated facilities" must be read to include not only facilities located within the annexed area, but also those located outside the annexed area that are fully or partially dedicated to providing services to the annexed area. Both parties agreed that if this approach were adopted, the fair market value of the dedicated facilities would be $434,987.

The district court adopted Logan's view of the statute and ordered Logan to pay $117,000 to UP & L in return for title to and use of all fully or partially dedicated distribution facilities located within Logan's city limits. The trial court rejected UP & L's claim for compensation for facilities located outside the boundaries of Logan that were dedicated to providing services within Logan. The court observed that if UP & L were awarded the compensation it sought, it would become economically unfeasible for Logan to take over servicing the fifty-five customers in question. This, the court stated, would effectively deny Logan the constitutional right conferred upon it by article XI, section 5(b) of the Utah Constitution to provide electrical services to its citizens. Therefore, the court rejected UP & L's interpretation of the statute and its constitutional claim. In sum, the court held that if a utility's constitutional right to just compensation interferes with a municipality's constitutional right to serve its residents, the municipality's right must take precedence. UP & L appealed to this court, which has jurisdiction by reason of section 78-2-2 of the Utah Code. Utah Code Ann. § 78-2-2(3)(j) (1988).

■ This appeal raises questions of law only. The court, therefore, will grant no deference to the trial court's ruling, but will review it for correctness. *E.g., State ex rel. Division of Consumer Protection*

*v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990); *Henretty v. Manti City Corp.*, 791 P.2d 506, 510 (Utah 1990); *see also Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989) ("The rulings of a trial court regarding statutory construction are not entitled to particular deference."). We also note that this is a case of first impression, as section 10-2-424 has not been previously construed by this court.

■ UP & L challenges the trial court's decision on two grounds. First, it claims that the city does not enjoy any right by reason of the electrical service provision of article XI, section 5(b) that can immunize it from the Utah Constitution's bar on damaging or taking private property without just compensation, article I, section 22 [3] and its federal analogue, the taking clause of the fifth amendment,[4] made applicable to the states by the due process clause of the fourteenth amendment.[5] UP & L then argues that the fair market value fixed by the district court, which excluded from the calculation the value of any of UP & L's assets outside the Logan City boundaries, does not satisfy these state and federal provisions. Second, UP & L asserts that the trial court erred in giving Logan title to the facilities within its city limits because section 10-2-424 does not confer upon a municipality asserting the right to oust an electrical utility serving its residents the right to acquire ownership of the utility's local distribution facilities. Rather, the statute requires that the municipality pay the fair market value of the distribution facilities but leaves title in the utility company. We will address first the constitutional question.

On that point, UP & L, relying on essentially the same arguments made below, challenges the trial court's conclusion that

---

3. Article I, section 22 of the Utah Constitution states, "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22.

4. The fifth amendment of the United States Constitution states in part that "private property [shall not] be taken for public use, without just compensation." U.S. Const.Amend. V.

5. The fourteenth amendment of the United States Constitution states in part, "No state shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.

the effect the prepayment of compensation would have on a municipality's ability to displace an electric utility is a constitutionally relevant factor to be considered in determining the amount of compensation due under section 10–2–424. Logan defends the trial court by arguing that article XI, section 5(b) of the Utah Constitution and section 10–2–424 of the Utah Code embody a policy of making the municipality's right to provide public services to its residents superior to the utility's right to receive just compensation for property taken or damaged for public use. In situations where these two rights come into conflict due to an annexation, Logan argues, the utility's right to just compensation must be conditioned on the municipality's right to serve its newly annexed residents.

We reject Logan's analysis. It finds no support in either the constitution or the statute. On a constitutional level, Logan fails to recognize the distinction between a power and a right. Article XI, section 5(b) confers upon the municipality the power to provide electrical services to its residents but not the right to do so. The constitutional grant of the power to provide public services, like the grant of other powers to public entities, cannot reasonably be read in the absence of more to display an intent that these powers may be exercised in derogation of specific rights protected by the Utah Constitution. We therefore conclude that UP & L's right to just compensation under article I, section 22 of the Utah Constitution must be fully protected against harms inflicted upon it by Logan in the exercise of the city's power to provide electrical services.[6]

■ Moving on to section 10–2–424 of the Utah Code, its relevant language provides that the municipality cannot, without the consent of the existing utility, serve newly accepted customers until it first reimburses the existing electric utility company serving those customers "for the fair market value of those facilities dedicated to provid[ing] service to the annexed area." Utah Code Ann. § 10–2–424. The trial court, in interpreting this reimbursement requirement so as to avoid payment for facilities outside the municipality's boundaries, relied on the notion that the amount to be paid could not be so great as to impair the municipality's ability to serve the annexed areas, a premise we have just rejected in interpreting the scope of the municipality's power under article XI, section 5(b). We must therefore look at the statute afresh.

■ When interpreting statutes, a central premise is that every effort should be made to interpret them as being consistent with the dictates of the constitution. *E.g., Crawford v. Tilley,* 780 P.2d 1248, 1252 (Utah 1989); *Utah State Road Comm'n v. Friberg,* 687 P.2d 821, 831 (Utah 1984). The language of the statute speaks of determining, for all "facilities dedicated" to providing service in the annexed area, "fair market value." There is nothing in these words to indicate that the legislature intended this reimbursement requirement to produce less compensation for the utility than would result from the application of article I, section 22. And we cannot determine with any certainty from our review of the legislative history what the legislature intended to be the measure of the reimbursement required. Under such circumstances, we look to article I, section 22 to decide the meaning of section 10–2–424 and conclude that the fair market value reimbursement requirement of section 10–2–424 is to be read as congruent with the "just compensation" requirement of article I, section 22.

The question then becomes, what is "just compensation" in this case? The answer is dependent upon a determination of whether and to what extent Logan's actions will constitute a "taking" or "damaging" of UP & L's property. Any such determination is not limited by the fact that the affected

---

6. Because we decide this case under the Utah Constitution, there is no need to reach the federal constitutional issues. *Cf. Mountain Fuel Supply Co. v. Salt Lake City Corp.,* 752 P.2d 884, 890 (Utah 1988) (no need to reach federal constitution when decision can be made under article I, section 24 of the Utah Constitution).

properties may be located outside the boundaries of Logan. UP & L is entitled to constitutional compensation regardless of where the properties are situated. The taking question is heavily fact-dependent and has not been fully addressed either in the trial court or here. Additionally, a detailed picture of what constitutes a taking or damaging has not been painted by this court. *See Colman v. Utah State Land Bd.*, 795 P.2d 622, 625–631 (1990) (Stewart, J., joined by Hall, C.J., Howe, Assoc. C.J.), at 637 (Zimmerman, J., concurring, joined by Durham, J.). We do not undertake to analyze this issue in the absence of clearer facts and more thorough briefing.

 The parties did, however, stipulate to what they thought UP & L would be entitled to under several legal theories. The $117,000 figure for which the trial court entered judgment assumed that the full constitutional measure for a taking would not apply, a position we have rejected. The $434,987 figure is *proffered* as a stipulated amount for "just compensation." The record does not permit us to determine whether the legal and factual premises upon which that figure is based are congruent with the constitutional requirements of article I, section 22. However, because the parties did stipulate to this amount, they are bound and the trial court should enter judgment against Logan for that amount if it proceeds or has proceeded with the ouster of UP & L from its territorial limits. Of course, by holding the parties to their stipulation, we do not endorse the correctness of the factual or legal assumptions the parties may have made in deciding what would amount to "just compensation" under article I, section 22.

UP & L has raised a second issue— whether the trial court properly ordered UP & L to transfer title of the facilities located within Logan to the city upon payment of the stipulated compensation. The answer to this question depends on the factual premises of the stipulation. If the $434,987 figure was premised on a transfer of title to some or all of the "taken or damaged" UP & L property, then title

should be transferred. On the other hand, if the stipulated amount was premised on UP & L's retaining some or all of the property, with a consequent reduction in the compensation to be paid, which reduction is reflected in the $434,987 figure, then title should not be transferred. The record in this case does not permit us to determine whether the stipulation anticipated transfer of title. We therefore vacate the order giving Logan title and remand the matter for further proceedings before the trial court to determine the parties' premises regarding title as they underlie the $434,987 stipulation. The trial court should then enter an order consistent with those premises.

The order of the trial court is reversed, and the matter is remanded with instructions to enter an order consistent with the stipulation of the parties and with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.