STRAWBERRY ELECTRIC SERVICE DISTRICT, an Electric Service District of the State of Utah, and Strawberry Water Users' Association, a Utah Corporation, Plaintiffs, Appellee, and Cross–Appellant,

v.

SPANISH FORK CITY, a Utah Municipal Corporation, Defendant, Appellant, and Cross–Appellee.

No. 940317.

Supreme Court of Utah.

June 21, 1996.

Michael R. Carlston, Reed L. Martineau, Rodney R. Parker, Salt Lake City, for plaintiffs.

Gary A. Dodge, Bentley J. Tolk, Salt Lake City, for defendant.

John R. Erickson, Brent O. Hatch, Salt Lake City, and F. Elgin Ward, Sandy, for amicus Deseret Generation & Transmission.

Val R. Antczak, James E. Karkut, Salt Lake City, for amicus Utah Associated Municipal Power.

RUSSON, Justice:

Spanish Fork City appeals from a decision of the Fourth District Court enjoining it from providing electric utility service to residents of its annexed areas to the extent that the supplier prior to annexation, Strawberry Electric Service District (Strawberry Electric), had present capacity to provide service at the time of the trial court's order. To the extent Strawberry Electric did not have present capacity to provide service, the trial court's decision allows Spanish Fork to provide electric service but only upon compensating Strawberry Electric for lost projected revenues. Spanish Fork also appeals the trial court's decision dismissing a request for a declaration as to Spanish Fork's rights and obligations if it determined to provide electric services to all residents within the annexed areas. Strawberry Electric cross-appeals that portion of the trial court's decision authorizing Spanish Fork to serve consumers in the annexed areas to the extent Strawberry Electric did not have present capacity to provide service. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. BACKGROUND

Since 1986, Strawberry Electric has been providing electric utility service to customers in portions of southern Utah County. It operates under a certificate of public convenience and necessity issued by the Public Service Commission. The certificate recognizes Strawberry Electric as the exclusive distributor of electric power to consumers residing in its service area.

Adjacent to Strawberry Electric's service area is Spanish Fork City, which has been experiencing rapid growth. During the 1980s, Spanish Fork annexed approximately 4,000 acres, partly in response to changes in the Utah County zoning classifications permitting more development in these areas. All of the areas annexed by Spanish Fork since the organization of Strawberry Electric were included within Strawberry Electric's service area. Moreover, these areas constitute some of the more densely populated portions served by Strawberry Electric. At the time of annexation, Strawberry Electric provided electric power to approximately 200 consumers in these areas. In addition, Strawberry Electric maintained excess capacity to serve future customers who would likely be high margin electric users due to the changed zoning rules.

After its incorporation of these areas, Spanish Fork commenced, on a limited basis, to provide electric utility service within these areas. After disconnecting Strawberry Electric's distribution lines, Spanish Fork attached its own lines and commenced electric service to six residential consumers. For the most part, however, Spanish Fork provided service only to new consumers to the annexed areas never before served by Strawberry Electric (hereinafter referred to as future consumers). Spanish Fork required construction permit applicants to agree, as a condition to obtaining the permit and other city services, to accept Spanish Fork electric service and reject Strawberry Electric's ser-

vices. By the time trial was held, Spanish Fork had commenced service to thirty-seven future consumers.

Aside from the six residential consumers, Spanish Fork elected to serve only future consumers because it claimed that it could not afford to provide service to all consumers in the annexed areas. Such an undertaking would have entailed reimbursing Strawberry Electric for its facilities used in supplying the areas, which, according to Spanish Fork's studies, was not economically feasible.

In some cases, Spanish Fork's strategy resulted in a duplication of Strawberry Electric's distribution system. Spanish Fork constructed distribution lines into the same areas in which Strawberry Electric had previously constructed its lines in anticipation of future growth. For example, Spanish Fork connected a line to a new building located on the property of the Intermountain Farmers Association (IFA), an existing customer of Strawberry Electric. Also, Spanish Fork constructed a line approximately one-half mile in length into the annexed area to serve only one consumer and another line approximately one mile in length to serve only two consumers. In all of these cases, Strawberry Electric stood ready to serve with distribution lines either within or immediately adjacent to the consumers' properties.

Strawberry Electric objected pursuant to section 10–2–424 of the Utah Code, which provides:

> Whenever the electric consumers of the area being annexed are receiving electric utility services from sources other than the annexing municipality, the municipality may not, without the consent of the electric utility, furnish its electric utility services to the electric consumers until the municipality has reimbursed the electric utility company which previously provided the services for the fair market value of those facilities dedicated to provide service to the annexed area. If the annexing municipality and the electric utility cannot agree on the fair market value, it shall be deter-

mined by the state court having jurisdiction.

Strawberry Electric requested that Spanish Fork provide service to either all consumers in the annexed area or none of them. Also, Strawberry Electric requested compensation for its lost right to serve in these areas if Spanish Fork elected to provide service.

Spanish Fork denied all requests. It insisted that it need not serve all or none of the consumers in the annexed area. Also, Spanish Fork believed that it was not obligated to compensate Strawberry Electric under the statute because it chose to serve only future consumers, not the existing customers of Strawberry Electric. Failing to informally resolve its dispute with Spanish Fork, Strawberry Electric initiated this lawsuit.[1]

Strawberry Electric sought an injunction to prohibit Spanish Fork from serving consumers within the annexed area until it received compensation. The compensation Strawberry Electric demanded included damages suffered as a result of its lost investment in facilities constructed to serve future growth. Spanish Fork counterclaimed, seeking two declarations: first, that it may serve future consumers without paying compensation and, second, enumerating its rights and obligations under section 10–2–424 if it elected to take over service to all residents within the annexed areas.

Strawberry Electric moved for summary judgment, arguing that Spanish Fork violated section 10–2–424 and urging dismissal of Spanish Fork's second claim for declaratory relief. Reasoning that the requested declaratory judgment would not "terminate the uncertainty or controversy giving rise to the proceeding," the trial court dismissed Spanish Fork's claim. Also, without identifying a particular damages formula, the trial court held that Spanish Fork was obligated to compensate Strawberry Electric for its lost right to provide electric service to future consumers. In so ruling, the trial judge limited the issues at trial to Strawberry Electric's claim for an injunction and the compensation due

---

1. In filing suit against Spanish Fork, Strawberry Electric was joined by Strawberry Water Users' Association (Strawberry Water), the entity from which Strawberry Electric obtained its distribution system and service area. Upon Spanish Fork's motion, the trial court dismissed Strawberry Water as a party to the litigation.

to Strawberry Electric under section 10–2–424.

During a bench trial, Strawberry Electric proposed a capitalized income method to assess damages. That is, it demanded anticipated revenues as damages caused by Spanish Fork's provision of service to future consumers. In contrast, Spanish Fork proffered a facilities-based calculation, or a calculation based on the amount by which the value of specified facilities dedicated to providing service to the annexed areas was lost.

Following the trial, the court enjoined Spanish Fork from providing electric utility services in the annexed areas until it complied with section 10–2–424. Specifically, the injunction prohibited Spanish Fork from serving the annexed areas until it either obtained Strawberry Electric's consent to provide service or paid Strawberry Electric the fair market value of those facilities dedicated to providing service to the annexed areas. In the expectation that Spanish Fork would compensate Strawberry Electric, the trial court enjoined Spanish Fork from providing service to future consumers who locate in the annexed areas after trial to the extent Strawberry Electric had capacity to serve them with its facilities then in place. The court ruled that Spanish Fork may provide electric services to future consumers who locate within the annexed areas to the extent that Strawberry Electric's service to them would require facilities in addition to meters, drop lines, and related items.[2]

With regard to each future consumer Spanish Fork was allowed to serve, however, the trial court ordered Spanish Fork to pay Strawberry Electric damages. Adopting Strawberry Electric's capitalized income method, the court awarded Strawberry Electric $1,108.50 for each residential consumer who would move into the annexed areas and a sum to be determined by the court for future commercial consumers. In addition, the trial court, utilizing the same method, awarded Strawberry Electric $41,015.50 for consumers who had moved into the annexed

area before trial and who had been served by Spanish Fork.

On appeal, both parties insist that the trial court erred. Strawberry Electric contends that the trial court incorrectly allowed Spanish Fork to serve only some consumers in the annexed areas. Spanish Fork argues that the trial court (1) adopted an inappropriate method to calculate damages, (2) improperly enjoined it from providing electric service within the annexed areas, and (3) improperly refused to declare Spanish Fork's rights and duties under section 10–2–424 if it determined to provide service to all residents within the annexed areas.

## II. ANALYSIS

▆▆▆ The first issue we address is whether section 10–2–424 of the Utah Code directs a municipality providing electric utility service to serve all consumers in a newly annexed area. When faced with a question of statutory construction, we look first to the plain language of the statute. *State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993); *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991). If the statute is unclear, we then resort to legislative history and purpose for guidance. *World Peace Movement v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994). The proper construction of section 10–2–424 is a question of law. *See Larsen,* 865 P.2d at 1357. We will therefore accord no deference to the trial court's ruling but will review it for correctness. *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *Henretty v. Manti City Corp.,* 791 P.2d 506, 510 (Utah 1990).

In pertinent part, section 10–2–424 provides:

Whenever the electric consumers of the area being annexed are receiving electric utility services from sources other than the annexing municipality, the municipality may not, without the consent of the electric utility, furnish its electric utility services to the electric consumers until the municipality has reimbursed the electric utility com-

---

**2.** On the basis of a motion filed by Spanish Fork, this court stayed the trial court's injunction

pending this appeal.

pany which previously provided the services for the fair market value of those facilities dedicated to provide service to the annexed area.

The plain language of section 10–2–424 does not reveal whether a municipality may elect to serve only some consumers in annexed areas. Rather, the statute provides only that whenever "the electric consumers" of an annexed area are receiving services from a utility, a municipality may not provide services to "the electric consumers" until the utility consents or the municipality pays. "[T]he electric consumers" could mean either all consumers, including future consumers, i.e., those in the annexed areas who have never received services from the utility, or only the consumers who have actually received service from the utility. To discern the proper construction, we must examine the legislative history and purpose underlying section 10–2–424.

The legislative policy of the code provisions dealing with expansions of municipalities includes the desire that municipalities provide city services to the residents of newly annexed areas: "Areas annexed to municipalities in accordance with appropriate standards should receive the services provided by the annexing municipality, subject to section 10–2–424, as soon as possible following the annexation...." Utah Code Ann. § 10–2–401(4). Thus, in enacting the provisions dealing with municipal expansion, the legislature endeavored to secure the benefit of city-offered services for those in newly annexed areas. See Sandy City v. Salt Lake County, 827 P.2d 212, 222 (Utah 1992) ("The legislature clearly prefers that cities provide urban services to developing areas and has designated annexation as the means by which those services should be extended.").

By serving only some consumers within the annexed areas, however, Spanish Fork acted to the detriment of the group which the legislature endeavored to benefit. With regard to consumers within the annexed areas,

Spanish Fork contravened the legislative policy that annexed areas should receive city services as soon as possible. When residents desire to incorporate with a municipality, see Utah Code Ann. § 10–2–416, a major reason for doing so is to receive city services. For the most part, however, Spanish Fork sought to serve none of the residents that desired incorporation but only those consumers who located in the areas after annexation.

■ We hold, therefore, that under sections 10–2–424 and 10–2–401(4), a municipality providing electric utility service to existing residents must provide that service to consumers in annexed areas.[3] Although section 10–2–424 is silent as to whether a city may serve only a portion of the customers in these areas, the legislative history and policy make clear that through section 10–2–424, the legislature sought to prevent the result of such a strategy.

■ The next issue is the proper measure of damages owed by Spanish Fork to Strawberry Electric as a result of its commencing electric service to portions of Strawberry Electric's service area. This issue involves an interpretation and application of section 10–2–424 and article I, section 22 of the Utah Constitution. Accordingly, we review the trial court's ruling for correctness. See Utah Dep't of Admin. Servs. v. Public Serv. Comm'n, 658 P.2d 601, 608 (Utah 1983).

Section 10–2–424 provides that a municipality taking over utility service in annexed areas must pay "the fair market value of those facilities dedicated to provid[ing] service to the annexed area." In City of Logan v. Utah Power & Light Co., 796 P.2d 697 (Utah 1990), this court established a framework by which to determine the "fair market value" of a utility's affected facilities. First, the facilities, both inside and outside the annexed area, used to provide service to the annexed area must be identified. Id. at 700–01. Next, an article I, section 22 [4] "takings" analysis with regard to those facilities is

---

3. Nothing in this opinion should be construed as implying that Spanish Fork could or could not choose to satisfy its obligation to serve its residents by contracting with Strawberry Electric or some other utility to provide electric utility service.

4. Article I, section 22 of the Utah Constitution provides, "Private property shall not be taken or damaged for public use without just compensation." Utah Const. art. I, § 22.

necessary. *Id.* The *City of Logan* court held that "fair market value" within the meaning of section 10–2–424 is equivalent to "just compensation" to the extent that the municipality's actions constitute a taking of the utility's property. *Id.* The *City of Logan* court, however, provided no guidance on the issue of calculating damages because the parties had stipulated to damages figures depending on the court's ruling. *Id.* at 701.

Prior cases nevertheless provide us with that guidance. Under article I, section 22, the takings analysis has two principal steps. First, the claimant must demonstrate "some protectible interest in property." *Colman v. Utah State Land Bd.*, 795 P.2d 622, 625 (Utah 1990). If the claimant possesses a protectible property interest, the claimant must then show that the interest has been "taken or damaged" by government action. *Id.* at 626. A "taking" is " 'any substantial interference with private property which destroys or materially lessens its value, or by which the owner's right to its use and enjoyment is in any substantial degree abridged or destroyed.' " *Id.* (quoting *State ex rel. State Road Comm'n v. District Court, Fourth Judicial Dist.*, 94 Utah 384, 394, 78 P.2d 502, 506 (1937)).

In this case, the dispute centers on the property in which Strawberry Electric possessed a protectible property interest. Spanish Fork claims that Strawberry Electric had a protectible property interest only in its physical facilities. Strawberry Electric, however, claims that in addition to its facilities, article I, section 22 protects its certificate of public convenience and necessity and the privileges incident thereto, that is, its right to serve all consumers within the annexed areas which fall within its service area, and the earnings it would have realized from those consumers.

This court has stated, " 'The kinds of property subject to the [eminent domain] right ... [are] practically unlimited.' " *Farmers New World Life Ins. Co. v. Bountiful City*, 803 P.2d 1241, 1244 (Utah

1990) (quoting *Lund v. Salt Lake County*, 58 Utah 546, 552, 200 P. 510, 512 (1921)). Indeed, article I, section 22 protects all property protected by its federal counterpart,[5] and perhaps even more so due to its more expansive language. *See Bagford v. Ephraim City*, 904 P.2d 1095, 1097 (Utah 1995). Under article I, section 22, " '[e]very species of property which the public needs may require, ... [including] legal and equitable rights of every description [is] liable to be thus appropriated.' " *Lund*, 58 Utah at 552, 200 P. at 512 (quoting Cooley, *Constitutional Limitations* 646 (6th ed.)).

In contending that Strawberry Electric has a protectible interest only in its facilities, Spanish Fork points out that such intangible assets as profits and future business are generally not protected by the Takings Clause. *Thorsen v. Johnson*, 745 P.2d 1243, 1246 (Utah 1987); *State ex rel. Road Comm'n v. Ouzounian*, 26 Utah 2d 442, 445, 491 P.2d 1093, 1095–96 (1971); *State ex rel. Road Comm'n v. Noble*, 6 Utah 2d 40, 44, 305 P.2d 495, 498 (1957); *State v. Tedesco*, 4 Utah 2d 248, 251, 291 P.2d 1028, 1029–30 (1956); 27 Am.Jur.2d *Eminent Domain* § 285 (1966); 4 Nichols *The Law of Eminent Domain* § 12B.09[1] (rev. 3d ed. 1995). These assets are generally too speculative and uncertain to award. *See Ouzounian*, 26 Utah 2d at 445, 491 P.2d at 1095–96; *Noble*, 6 Utah 2d at 44, 305 P.2d at 498; *Tedesco*, 4 Utah 2d at 251, 291 P.2d at 1030.

These authorities, however, do not deal with the taking of a public utility which enjoys an exclusive right to conduct business within its service area. The taking of a public utility includes not only the physical facilities of the utility, but also its exclusive business. 27 Am.Jur.2d *Eminent Domain* § 339 (1966). Moreover, this court has held that some kinds of contractual rights, such as exclusive commercial privileges, may also be "property" that can be taken for public use. *Bagford*, 904 P.2d at 1098–99; *see also West River Bridge Co. v. Dix*, 47 U.S. 507, 533–34, 6 How. 507, 12 L.Ed. 535 (1848) (holding that for Fifth Amendment takings purposes, a

---

5. The Fifth Amendment of the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides in part that

"private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V.

franchise is property subject to eminent domain).

However, to create a protectable property interest, a contract must establish rights more substantial than a unilateral expectation of continued privileges. "Absent an exclusive franchise or the equivalent thereof, no vested, legally enforceable interest arises, and consequently, there is no property that can provide the basis for compensation in an inverse condemnation proceeding." *Bagford,* 904 P.2d at 1099.

In this case, Strawberry Electric's commercial privilege is subject to termination by annexing municipalities and therefore is nothing more than a mere unilateral expectation of a continued right to service customers. While Strawberry Electric operates pursuant to a certificate of public convenience and necessity issued by the Public Service Commission, municipalities are not subject to the regulation and control of the Commission, *Utah Power & Light Co. v. Public Serv. Comm'n,* 122 Utah 284, 289, 249 P.2d 951, 953 (1952); *Barnes v. Lehi City,* 74 Utah 321, 349, 279 P. 878, 888 (1929), and are specifically authorized to regulate the sale and use of electric power within their boundaries. Utah Code Ann. § 10–8–21. Moreover, section 10–2–401(4) provides:

> Areas annexed to municipalities . . . should receive the services provided by the annexing municipality, subject to Section 10–2–424, as soon as possible following the annexation. . . .

This section, and section 10–2–424 by reference, must be construed as a term of Strawberry Electric's certificate of public convenience and necessity. Strawberry Electric was therefore on notice that all or part of its service area could be annexed and its exclusive business privilege limited or terminated. Thus, Strawberry Electric has no protectable property interest in its certificate of public convenience and necessity where its service area is lawfully invaded by an annexing municipality.

The trial court, without the benefit of *Bagford,* failed to appreciate Spanish Fork's right to lawfully invade Strawberry Electric's service area and ruled that Strawberry Electric was entitled to lost future income from consumers in the annexed areas. Apparently, the trial court determined that Strawberry Electric had an exclusive commercial privilege even though Utah law confers upon municipalities the right to lawfully invade Strawberry Electric's service area. In this respect, the trial court erred. We therefore reverse the trial court's damage award to the extent it was based upon the incorrect premise that Strawberry Electric had an exclusive right vis-a-vis lawfully invading municipalities to serve annexed consumers.

Notwithstanding a municipality's right to commence service within its annexed areas, a utility does have a protectable property interest in its certificate until its service area is lawfully invaded. Until an annexing municipality has complied with section 10–2–424, it has the power to invade the utility's service area but not the right. *City of Logan,* 796 P.2d at 700. And since municipal power cannot be exercised in derogation of specific rights protected by article I, section 22, *id.,* the utility has a legally cognizable expectation to exclusively provide electricity within its service area. In this case, when Spanish Fork began to serve annexed residents, Strawberry Electric had a legally cognizable interest in an exclusive privilege to serve within its service area.

In pertinent part, section 10–2–424 provides that when an electric utility company has been serving consumers in an area annexed by a municipality, "the municipality may not, without the consent of the electric utility, furnish its electric utility services to the electric consumers *until* the municipality has reimbursed the electric utility company . . . for the fair market value of those facilities dedicated to provid[ing] service to the annexed area." Utah Code Ann. § 10–2–424 (emphasis added). According to the plain language of this statute, *see State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993) (directing that in construing a statute's provisions, courts are bound by its plain language), a municipality may not commence service within any portion of an electric utility's service area unless it has either obtained the utility's consent or reimbursed the utility for its compensable losses. Any other construction

would entail an improper disregard of the section's terms. *See State v. One 1984 Oldsmobile*, 892 P.2d 1042, 1046 (Utah 1995) (We must assume that " 'each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.' " (quoting *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 670 (Utah 1991))).

Spanish Fork all but concedes that it violated section 10–2–424. Spanish Fork admits that it furnished electric service to forty-three residents of the annexed areas before either securing Strawberry Electric's consent or reimbursing Strawberry Electric for its compensable losses. This conduct violates section 10–2–424.

Moreover, the effect of Spanish Fork's noncompliance is that Strawberry Electric has an exclusive right to serve consumers within its service area. Until Spanish Fork either secures Strawberry Electric's consent or pays Strawberry Electric for the "fair market value of those facilities dedicated to provid[ing] service to the annexed area[s]," Strawberry Electric has a legally enforceable interest in exclusively serving within its service area. This includes its right to serve any customer in the annexed areas until Spanish Fork complies with section 10–2–424. Therefore, under *Bagford*, Strawberry Electric has a protectible property interest in serving these customers, and if this interest has been "taken or damaged," it must be compensated accordingly.

Next, we must determine whether Strawberry Electric's protectable property interest has been "taken or damaged" by Spanish Fork's actions. *See Colman*, 795 P.2d at 626. Every consumer within the annexed areas served by Spanish Fork before it ultimately complies with section 10–2–424 represents a partial taking or damaging of Strawberry Electric's protectable property interest. As of the time of trial, Spanish Fork commenced service to forty-three consumers. If Spanish Fork has since commenced service to more consumers, it has further damaged Strawberry Electric's protectable interest. Accordingly, Spanish Fork must compensate Strawberry Electric for its inability to serve these customers.

This compensation must include the profits Strawberry Electric would have realized during the time Spanish Fork failed to comply with section 10–2–424. That is, Strawberry Electric is entitled to the lost profits from each of the forty-three above-mentioned customers, in addition to any other customer that has located in the annexed areas and for whom Spanish Fork has commenced service, from the time Spanish Fork initially served the customer until it complies with section 10–2–424 by compensating the utility.

Spanish Fork objects to an approach which would award lost profits. First, Spanish Fork contends that the language of section 10–2–424 precludes such an award. According to Spanish Fork, a municipality is required to "reimburse[ ] the electric utility company" only when it supplants a portion of the company's service area and a city can "reimburse" a company only for expenses already incurred, not for lost profits. Second, Spanish Fork argues that section 17A–2–302(1)(a) of the Utah Code precludes an award of lost profits to the extent it denies electric utility companies the right to provide service in areas adjacent to the service territory of municipal agencies.

Spanish Fork's contentions lack merit. Its argument that the text of section 10–2–424 precludes an award of lost profits is unpersuasive because it requires an unconstitutional construction of the statute. Utah courts should "construe statutory terms to avoid an unconstitutional application of the statute." *Utah State Road Comm'n v. Friberg*, 687 P.2d 821, 831 (Utah 1984). This court has ruled that "the fair market value reimbursement requirement of section 424 is to be read as congruent with the 'just compensation' requirement of article I, section 22" of the Utah Constitution. *City of Logan*, 796 P.2d at 700. And above, we ruled that article I, section 22 protects as an incident of Strawberry Electric's certificate of public convenience and necessity profits from consumers Spanish Fork unlawfully served. If we were to interpret section 10–2–424 in the manner proposed by Spanish Fork, we would be forced to hold the statute unconstitutional.

Therefore, "reimburse" for purposes of section 10–2–424 means to make whole for any losses compensable under article I, section 22 of the Utah Constitution. *Accord The American Heritage Dictionary of the English Language* 1097 (1980) (defining "reimburse" as "to ... compensate ... for ... losses or damages incurred").

The second challenge—that section 17A–2–302(1)(a) of the Utah Code precludes an award of lost profits—is unripe. This argument was made for the first time on appeal. " 'With limited exceptions, the practice of this court has been to decline consideration of issues raised for the first time on appeal.' " *Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 455 (Utah 1993) (quoting *Espinal v. Salt Lake City Bd. of Educ.*, 797 P.2d 412, 413 (Utah 1990)). We therefore decline to address this argument.

As discussed above, to lawfully invade Strawberry Electric's service area, Spanish Fork must commence service to all consumers within the annexed areas and pay Strawberry Electric "the fair market value of those facilities dedicated to provid[ing] service to the annexed area[s]." Utah Code Ann. § 10–2–424. Further discussion of damages is therefore warranted to guide the trial court in calculating them.

Section 10–2–424 requires that to serve the consumers within the annexed areas, Spanish Fork must pay Strawberry Electric the fair market value of the facilities dedicated to serving within those areas. Both parties agree that section 10–2–424 therefore requires compensation for the utility's lost or stranded physical facilities, such as distribution lines, poles, conduits, and related hardware. In addition, *City of Logan* suggests that Strawberry Electric is entitled to recover damages for the diminished value of its remaining physical property. *City of Logan* directed that damage awards should compensate utilities for facilities damaged outside the annexed areas, which suggests that utilities are entitled to severance damages. *See City of Logan*, 796 P.2d at 700–01. Severance damages are awarded for a partial taking, as opposed to a taking of the entire business, and compensate the owner for the diminished value of its remaining physical

property. *See* 4A Julius L. Sackman & Patrick J. Rohan, *Nichols' The Law of Eminent Domain* §§ 14.02[1][a], 15.11 (rev. 3d ed. 1994 & Supp.1995). Thus, to serve the annexed areas, Spanish Fork must pay Strawberry Electric the fair market value of its lost or stranded facilities and severance damages.

In sum, Strawberry Electric is entitled to profits from customers within the annexed areas served by Spanish Fork during Spanish Fork's noncompliance with section 10–2–424. However, Strawberry Electric is not entitled to future profits from consumers within the annexed areas after Spanish Fork complies with section 10–2–424. In addition, if Spanish Fork serves all consumers within the annexed areas, which it must do pursuant to section 10–2–424 of the Utah Code, it must pay Strawberry Electric for its facilities dedicated to service within the annexed areas. Such an award would include damages for Strawberry Electric's lost and stranded facilities and severance damages.

The next issue is whether the trial court improperly enjoined Spanish Fork. The trial court found Spanish Fork in violation of section 10–2–424 for failing to compensate Strawberry Electric for its losses before it commenced electric service within the annexed areas. The trial court held, "If the City wishes to provide *any services* in the areas served by [Strawberry Electric], it must obtain the consent of [Strawberry Electric] or it must pay [Strawberry Electric] for the fair market value of those facilities dedicated to provid[ing] service to the annexed area." The trial court further ordered that even if it compensates Strawberry Electric, Spanish Fork is prohibited from serving consumers in the annexed areas whom Strawberry Electric had present capacity to serve.

Spanish Fork levels three objections to the trial court's injunction. First, Spanish Fork argues that a municipality's authority to furnish utility service to its residents may not be prohibited and therefore Strawberry Electric's sole remedy is monetary damages. Second, Spanish Fork maintains that inasmuch as the injunction mandates the termination of service to six residential consumers

that it disconnected from Strawberry Electric's distribution system and connected to its own, the injunction contravenes a three-year statute of limitations. Third, Spanish Fork asserts that the injunction preventing it from serving its residents incorrectly assumes that Strawberry Electric has an exclusive right vis-a-vis municipalities in compliance with section 10–2–424 to serve its customers. In considering these arguments, "[w]e will not disturb a trial court's judgment granting or refusing an injunction unless the court abused its discretion or the judgment rendered is clearly against the weight of the evidence." *Birch Creek Irrigation v. Prothero,* 858 P.2d 990, 993 (Utah 1993).

█ Injunctions are available only upon a showing of irreparable injury for which there is no adequate remedy at law. *System Concepts, Inc. v. Dixon,* 669 P.2d 421, 425–27 (Utah 1983). Injunctions are commonly granted where an exclusive business, such as Strawberry Electric's until a municipality supplants it in compliance with section 10–2–424, is unlawfully invaded. *See Georgia Power Co. v. Altamaha Elec. Membership Corp.,* 221 Ga. 521, 145 S.E.2d 691, 695 (1965); *Southern Indiana Gas & Elec. Co. v. Indiana Statewide Rural Elec. Coop.,* 251 Ind. 459, 242 N.E.2d 361, 368 (1968); *Mid-America Pipeline Co. v. Iowa State Commerce Comm'n,* 253 Iowa 1143, 114 N.W.2d 622, 626 (1962); *Campbell Sixty–Six Express, Inc. v. J. & G. Express, Inc.,* 244 Miss. 427, 141 So.2d 720, 726 (1962); *Missouri Utilities Co. v. Scott–New Madrid–Mississippi Elec. Coop.,* 475 S.W.2d 25, 28 (Mo. 1972) (en banc); 43A C.J.S. *Injunctions* § 106 (1978). When invaded, the business bears irreparable injury for which there is no adequate remedy at law; "[m]onetary damages would be difficult and perhaps impossible to ascertain, and [the business] would be forced to bring continuing and successive lawsuits for damages." *Payne v. Jackson City Lines, Inc.,* 220 Miss. 180, 70 So.2d 520, 523 (1954).

█ Moreover, an injunction is proper whether the unlawful invasion is effected by another company or by a governing body. *City of Pinellas Park v. Cross–State Utils. Co.,* 205 So.2d 704, 706–07 (Fla.Dist.Ct.App.

1968); *Missouri Pub. Serv. Co. v. City of Trenton,* 509 S.W.2d 770, 772 (Mo.Ct.App. 1974); 43A C.J.S. *Injunctions* § 106 (1978). These authorities countenance enjoining municipal actions where the municipality illegally extends its utility service. *See Cross–State Utils. Co.,* 205 So.2d at 706–07; *Missouri Pub. Serv. Co.,* 509 S.W.2d at 772. We adopt this rule and will therefore approve the trial court's injunction if Spanish Fork exceeded its authority in furnishing electric service to the annexed areas.

█ In resolving the previous issue, we held that Spanish Fork violated section 10–2–424. Spanish Fork contends, however, that the injunction ignores the applicable statute of limitations. Spanish Fork maintains that it connected its lines to the six consumers no later than 1986. Further, Spanish Fork contends that actions for liability created by section 10–2–424 must be commenced within three years of connection. *See* Utah Code Ann. § 78–12–26. Because Strawberry Electric's action was not commenced within three years of connection, Spanish Fork argues, Strawberry Electric's claims with respect to these consumers are time-barred. The trial court rejected the application of this statute, explaining that Spanish Fork "continues to violate [section 10–2–424] in providing service" to the six consumers.

To address whether Strawberry Electric's cause of action is time-barred, we must determine exactly what acts comprise the cause of action and when they occurred. Under section 10–2–424, a "municipality may not, without the consent of the electric utility, furnish its electric utility services to the electric consumers until the municipality has reimbursed the electric utility company." Utah Code Ann. § 10–2–424. Thus, the action forbidden by section 10–2–424 is the "furnish[ing of] electric utility services" without the utility's consent or before compensation is provided.

It is undisputed that Spanish Fork furnished electric service to at least forty-three consumers. The next step is to determine when Spanish Fork furnished those services. From the record, it appears that at least until trial, Spanish Fork furnished electric

utility services to the specified consumers. At no time before trial did Spanish Fork cease to provide service to these residents. Indeed, had Spanish Fork done so, the injunction, at least as to these consumers, would have been unnecessary. Therefore, assuming the applicability of section 78–12–26 of the Utah Code,[6] Strawberry Electric's claims were not time-barred because Spanish Fork violated section 10–2–424 within the time set forth in section 78–12–26. Thus, the trial court did not abuse its discretion in enjoining Spanish Fork's electric utility service until it complies with section 10–2–424.

The trial court's injunction, however, would prohibit Spanish Fork from serving consumers within the annexed area whom Strawberry Electric had present capacity to serve even if Spanish Fork ultimately complies with section 10–2–424. This portion of the trial court's injunction was based upon the now discredited premise that Strawberry Electric possessed an exclusive right vis-a-vis municipalities in compliance with section 10–2–424 to serve consumers within the annexed areas. We ruled above that it does not. We therefore reverse that part of the trial court's injunction preventing Spanish Fork from serving its residents even if it complies with section 10–2–424.

The final issue on appeal is whether the trial court properly refused to consider Spanish Fork's request for a declaratory judgment as to its rights and duties if it decided to provide electric service to all residents within the annexed areas. The trial court dismissed Spanish Fork's request on the ground that "[s]uch a judgment would not 'terminate the uncertainty or controversy giving rise to the proceeding.'" (Quoting Utah Code Ann. § 78–33–6.) Spanish Fork argues that its action is justiciable and that Utah law concerning condemnation, specifically section 78–34–16 of the Utah Code, precludes the dismissal of its action.

Under the Utah Declaratory Judgment Act,

> [a]ny person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction ... arising under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder.

Utah Code Ann. § 78–33–2. The Act goes on to state, however, "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." *Id.* § 78–33–6. To sustain a declaratory judgment action, there must exist "a justiciable controversy based upon an accrued set of facts, an actual conflict, adverse parties, a legally protectible interest on the plaintiff's part, and an issue ripe for judicial resolution." *Barnard v. Utah State Bar,* 857 P.2d 917, 919 (Utah 1993). The statute gives a trial court discretion to either grant or deny a party's declaratory judgment action by virtue of the statute's use of the word "may." *See World Peace Movement v. Newspaper Agency Corp.,* 879 P.2d 253, 265 (Utah 1994) (Russon, J., dissenting); *cf. Canyon Country Store v. Bracey,* 781 P.2d 414, 420 (Utah 1989) (holding that use of word "may" in Utah Rule of Civil Procedure 49 indicates grant of discretion to trial court); *accord Boyle v. National Union Fire Ins. Co.,* 866 P.2d 595, 598 (Utah.Ct.App.1993).

In this case, the issue for which Spanish Fork requested resolution was not ripe, nor did it represent an actual conflict. In its own words, Spanish Fork "sought a determination of the value of the facilities dedicated to provid[ing] service to all consumers in the Annexed Areas and the extent to which title to affected facilities would pass." As such, Spanish Fork's theoretical taking had no specified date, and therefore, any valuation of Strawberry Electric's compensable losses would be inaccurate or outmoded. More-

---

**6.** For the purpose of this discussion, we need not determine whether this section prescribes the applicable limitation period. It is important to note that an action under section 10–2–424 is, to a large extent, founded upon article I, section 22. *City of Logan,* 796 P.2d at 701. Thus, section 78–12–26, which prescribes a limitation period for liability created by statutes, may not be applicable to the extent liability is actually created by the Utah Constitution. *See Webber v. Salt Lake City,* 40 Utah 221, 224, 120 P. 503, 504 (1911).

over, the value of Strawberry Electric's compensable losses as a result of such a taking was never the source of any actual conflict among the parties. Indeed, Spanish Fork admitted that undertaking electric service to all consumers within the annexed areas would not be economically feasible.

Contrary to Spanish Fork's suggestion, section 78–34–16 does not support its claim for declaratory relief. In relevant part, this statute provides:

> Condemnor, whether a public or private body, may, at any time prior to final payment of compensation and damages awarded the defendant by the court or jury, abandon the proceedings and cause the action to be dismissed without prejudice, provided, however, that as a condition of dismissal condemnor first compensate condemnee for all damages he has sustained and also reimburse him in full for all reasonable and necessary expenses actually incurred by condemnee because of the filing of the action by condemner [sic], including attorneys fees.

Utah Code Ann. § 78–34–16. Spanish Fork contends that this section supports the view that it may receive a determination of value from a court prior to determining whether to complete the condemnation. Spanish Fork, however, misapprehends the reasons for the trial court's dismissal. The trial court did not reject Spanish Fork's request because it did not commit to assuming electric service throughout the annexed area. Rather, the trial court denied declaratory relief because Spanish Fork's issue had not yet accrued; the issue was not ripe, and no actual conflict existed between the parties. In short, the trial court properly refused to issue an advisory opinion. Thus, the trial court did not abuse its discretion in dismissing Spanish Fork's declaratory judgment action.[7]

## III.  CONCLUSION

We conclude that the trial court incorrectly authorized Spanish Fork to serve only select customers in the annexed areas and incorrectly calculated Strawberry Electric's damages to include projected earnings from consumers whom Spanish Fork may lawfully serve. In addition, the trial court abused its discretion in enjoining Spanish Fork from serving annexed residents if it complies with section 10–2–424. The trial court, however, did not abuse its discretion in enjoining Spanish Fork from serving annexed residents until it complies with section 10–2–424 and in dismissing Spanish Fork's second claim for declaratory relief. We therefore lift the stay of the permissible part of the trial court's injunction, reverse in part, affirm in part, and remand for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., HOWE, J., and PEULER and THORNE, Judges, concur in RUSSON's, J., opinion.

STEWART, Associate C.J., and DURHAM, J., having disqualified themselves, do not participate herein; PEULER and THORNE, District Judges, sat.

---

7. We note that our resolution of the first issue will require the determination of compensation owed to Strawberry Electric as a result of Spanish Fork's assumption of utility service to all residents in the annexed areas. Spanish Fork must provide service to all of its residents, and Strawberry Electric must be compensated accordingly. However, the trial court's dismissal of Spanish Fork's declaration request was still proper since it lacked the benefit of this ruling.